

## United States District Court
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| ALMA TUCKER | § | |
| | § | |
| V. | § | CASE NO. 5:04cv101 |
| | § | (Judge Folsom/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

### HISTORY OF THE CASE

Plaintiff originally filed an application for Disability Insurance Benefits on May 1, 2000, alleging inability to work since October 28, 1998 due to uncontrollable gas, loss of bowel control, and rectal and vaginal bleeding. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After holding a hearing on June 19, 2002, the ALJ issued an unfavorable decision on August 28, 2002. Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request on April 5, 2004. Therefore, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of

the final administrative decision pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

Plaintiff was 57 years old at the time of the ALJ hearing and had a high school education. She also had one year of vocational training and was a licensed vocational nurse. According to the ALJ, Plaintiff related the following factual history:

> Dr. Glenn-Mall noted in July 1998 that the claimant had problems with low back pain, urinary incontinence, and perineal odor. (Exhibit 2F, page 7). The claimant's gynecologist had not detected any perineal, vaginal infection, or bladder infections. She described the lower back pain as intermittent, somewhat associated with her bowel movements. The claimant indicated that she sometimes had to strain with bowel movements, with occasional rectal bleeding of 1-2 drops on the toilet tissue. She had a little bit of urinary incontinence , mild and improved since her hysterectomy two years before. The claimant had a history of diverticular disease confirmed by colonoscopy. After examination, the claimant's rectal bleeding was determined to be from hemorrhoidal tissue. The claimant's odor was thought to be due to her hemorrhoids or bladder incontinence.
>
> Dr. Jacobson examined the claimant in September 1998. Exhibit 1F, page 30). The claimant complained of leakage from her rectum, which was described as having no control of gas or stool and a feeling of moisture in the rectal area with a bad odor. The claimant had not seen stool leakage, but had noticed the increased flatus. She had alternating constipation and diarrhea, and indicated that when she went to the bathroom she had difficulty emptying her bowels and had to clean herself quite a bit. She had anal irritation. On examination, Dr. Jacobson noted that rather than weak tone, her sphincter muscles were actually quite tight. Her levator muscles were extremely tight, especially posteriorly and left laterally, and there was a lot of soft stool in the rectum and a minimal rectocele. Dr. Jacobson's opinion was outlet obstruction with levator spasm, incomplete emptying of the rectum causing some pruritus ani and leakage of moisture and stool. The claimant underwent rectocele repair, and was noted in December 1998 to be doing well with the surgical repair. (Exhibit 1F, page 32). She noted a return of odor and gas after returning to work. Dr. Jacobson noted that the claimant had foul drainage in December 1998, and was not really completely emptying the rectum due to tight muscles. *Id.*

The claimant was referred to Dr. Barnhill in February 1999. (Exhibit 1F, page 66). The claimant was noted to have an eight-month history of incompetence of the anal sphincter. The claimant underwent a posterior colporrhaphy, but her anal sphincter competency was still inadequate. The claimant related a leakage of foul-smelling mucus discharge transanally. She had daily stress urinary incontinence. Following the posterior colporrhaphy, the claimant had dysparuenia. Examination of the vagina revealed a raised flap of tissue at the posterior portion of the introitus, somewhat scarred and suggesting that the surgical stitches had pulled through and allowed the vaginal mucosa to heal in a raised position. Palpation of this tissue flap produced some discomfort, and was thought to be causing dyspareunia. The claimant had a loss of the urethrovesical angle, and a grade 2-3 cystocele. Examination of the anus revealed a minimal ability to contract the anal sphincter.

Dr. Barnhill referred the claimant to Dr. Cole, who indicated in March 1999 that the claimant had lax anal tone and possible internal prolapse of the rectal mucosa. (Exhibit 1F, page 64). An examination of the claimant's vulva showed significant decrease in the diameter of the perianal body. In April 1999, the claimant underwent anterior and posterior colporrhaphy. (Exhibit 1F, page 57).

Dr. Barnhill noted in May 1999 that the claimant felt well, and was having satisfactory bowel and urinary function. (Exhibit 1F, page 53). Manual examination revealed good results with the surgery. The claimant's bladder was in an anatomic position, and the levator muscles were well approximated across the anterior rectal wall. Rectal examination revealed no mucosal deficits. In June 1999, the claimant complained of leakage, which she thought was from the vagina. (Exhibit 1F, page 52). The examination showed a continued normal postoperative examination, with continued weak anal sphincter.

In August 1999, the claimant reported renewed incontinence of the anal sphincter, with frequent loss of mucous and flatus. (Exhibit 1F, page 51). She had experienced a few episodes of rectal bleeding. Rectovaginal examination showed good approximation of the levator muscles, but total incompetency of the exterior and sphincter.

Dr. Cole examined the claimant in October 1999 for multiple vague complaints related to her previous gynecological surgery and sensation of leaking fluid from her vagina. (Exhibit 1F, page 39). Dr. Cole noted that the claimant had not actually seen fluid leaking from the vagina. Her previous difficulties with incontinence had cleared, but she had a sensation of dripping mucous from the rectum. This was limited to

sensation only, as she had not seen leaking mucous, and there was no soiling of her underwear. She indicated that she no longer passed gas through the vaginal area. Dr. Cole noted that a neurological examination had shown no abnormalities, and Dr. Barnhill and four other gynecologists could not detect any abnormality. An internist had also detected no physical abnormality, and recommended a psychiatric consultation. The claimant was unwilling to do this. Examination of the perianal area showed no soilage. There was minimal weakness to sphincter tone, and had marked improvement in tone since last examined. She had moderate sized internal and external hemorrhoids, but no fissure or fistulas. Dr. Cole recommended follow-up care with Dr. Barnhill.

The claimant was sent to Mayo Clinic in January and February 2000. (Exhibit 1F, page 1). Her diagnoses were rectal and vaginal discharge, flatus, bacterial vaginosis, history of anterior and posterior colporrhaphy, history of rectocele repair, hypertension, glucose intolerance, mild renal insufficiency, hyperlipidemia, and possible irritable bowel syndrome.

Dr. Choi examined the claimant in May 2000. (Exhibit 1F, page 35). The claimant complained of a feeling of pressure in the rectal area, and a feeling that she was not voiding her bowels completely. Following a normal bowel movement, she noticed passage of gas and loose discharge through the rectum. There was no evidence of cystocele or rectocele, and no evidence of fistula tract. Rectal tone was within reasonably normal range. There was a minimum degree of scar tissue between the rectal vaginal septum, but the examination was otherwise unremarkable. Dr. Choi found no indication that gynecological surgery was required.

Dr. Patel examined the claimant in September 2001. (Exhibit 6F). The claimant complained of rectal incontinence on a daily basis, associated with intermittent bleeding. The claimant had rubber banding in July 2001 for hemorrhoids, but she did not notice improvement. She had been experiencing episodes of nausea and abdominal discomfort for 6-8 months. Her appetite was fair, and there was no significant weight loss. She had frequent episodes of vaginal infections. She had been experiencing bilateral hip pain for a year. Dr. Patel noted that the claimant was able to sit, stand, move around, and continue daily activities normally without much problem other than bowel incontinence. Dr. Patel noted that only a diagnosis of lax anal tone was present in the records he reviewed, and there was no record of fistula. There was no indication of rectal incontinence on coughing and bearing down. Dr. Patel diagnosed history of bowel incontinence, etiology not clear.

_____

> The claimant testified that she has constant daily problems with constipation and diarrhea. The problems alternated weekly. She testified that she has a lot of pain in her back and abdomen, with some days being worse with a lot of pain and burning in the rectal area. She estimates that she has 5 "bad days" per month, and on those days she stays on a liquid diet and rests most of the day in bed. She testified that her need to used the bathroom frequently interferes with her ability to do work, and finds it hard to focus on the task at hand. She testified that at work, the odor bothers others and interferes with her ability to do her job. I find that this level of symptomatology is more severe than would be suggested by the medical evidence. Additionally, the claimant's difficulties with odor is a condition that would prevent a claimant from actually being hired to do work that she could otherwise do, not one that impairs her from actually performing work. (20 C.F.R. § 404.1566(c)(7)).

———
(T.R. 12-15).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's incompetence of the anal sphincter, status post anterior and posterior colporrhaphy is a severe impairment, based upon the requirements in the Regulations. (20 C.F.R. § 404.1521).

4. The medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. (SSR 96-7p).

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. (20 C.F.R. § 404.1527).

7. The claimant has a residual functional capacity for work where the claimant's job area is isolated from co-workers.

8. The claimant's past relevant work as accounting technician did not require the performance of work-related activities precluded by her residual functional capacity. (20 C.F.R. § 404.1565)

9. The claimant's medically determinable impairment does not prevent the claimant from performing her past relevant work.

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (20 C.F.R. § 404.1520(e)).

(TR 17).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## **ANALYSIS**

Plaintiff raises the following four issues for appeal: 1) whether the Commissioner's decision was supported by substantial evidence; 2) whether the ALJ erred in failing to give proper weight to the opinions of Plaintiff and her physicians; 3) whether the ALJ erred in failing to evaluate Plaintiff's non-exertional limitations when assessing Plaintiff's residual functional capacity; and 4) whether the ALJ erred in failing to consider Plaintiff's disability and how her condition affects her residual functional capacity.

Plaintiff claims that the ALJ did not consider her non-exertional limitations. She also claims that the ALJ erred in not giving controlling weight to her treating physician's opinions. In October 1998, Plaintiff had a rectocele repair, which repairs the bulging of the front wall of the rectum into the vagina, and in August 1998 she had an anterior posterior colporrhaphy, resulting in a complete disappearance of any symptoms (T.R. 106). A January 25, 1999 letter from her physician, Robert Jacobson, M.D., revealed that Plaintiff would only be out work for two to four months due to her "rectal problem" (T.R. 121). In May 1999 and June 1999, Danny Barnhill, M.D., released Plaintiff to perform all normal activities (T.R. 147-148). In June 1999, she claims that the symptoms reappeared, including uncontrollable gas. An August 1999 barium enema was negative for extravasation (a discharge of blood into tissue) or fistula, and a September 1999 colon x-ray showed only moderate diverticulitis (T.R. 106, 139, 140, 142).

Plaintiff went to Philip Cole, M.D., with Colon and Rectal Associates in October

1999, complaining of "multiple, vague complaints, most centering around previous gynecological surgery and the sensation that she is leaking fluid from her vaginal [sic], although she has not actually seen any fluid leaking from the vagina" (T.R. 133, 228). Plaintiff demonstrated no incontinence and Dr. Cole observed no neurological abnormalities or gynecological problems.  Dr. Cole specifically noted that "approximately four other gynecologists . . . have not found any abnormality" (T.R. 133, 228).  Plaintiff also stated that she saw one physician who also found no abnormality and he recommended a psychiatric consultation (T.R. 133, 228).  Dr. Cole's impression was that Plaintiff experienced hemorrhoids, a history of fecal incontinence but no evidence of it presently, and vaginal complaints (T.R. 134, 229). On October 25, 1999, Dr. Cole discussed with Dr. Barnhill the examination results, and Dr. Barnhill reported to Dr. Cole that "[h]e has not found any gynecological abnormality" (T.R. 227).    Plaintiff went to Maurice Webb, M.D., in February 2000, complaining of occasional vaginal discharge, rectal seepage, and a loss of flatus from the rectum (T.R. 97).  The physical examination resulted in a negative rectal examination, no evidence of any rectovaginal fistula, nor evidence of any vaginal discharge. Dr. Webb concluded that he could not find any problem with Plaintiff aside from her bacterial vaginosis (T.R. 97, 101).  A physician's note the next day reported that a colonoscopy within the past year showed only diverticulitis (T.R. 103). A February 3, 2000, consultation revealed that Plaintiff's main problem was her fecal incontinence and odors. After further discussion, Plaintiff's complaint focused on her odors and not the incontinence (T.R. 107). By March 2000, "her problem with odor

has almost completely dissolved but she is continuing to have difficulty with [constipation from the Citrucel]" (T.R. 112).

On September 20, 2001, Plaintiff went to J.O. Patel, M.D., for an internal medical consultative examination (T.R. 265). Aside from her history described above, Plaintiff also complained of a six to eight month history of nausea and abdominal discomfort, but she kept a "fair" appetite and experienced no significant weight loss. Plaintiff was able to sit, stand, and move about and perform her daily activities normally without much problem, but she did have constant bowel incontinence. Dr. Patel assessed Plaintiff with a history of bowel incontinence with no clear etiology aside from the lack of anal tone, but there was no diagnosis of fistulas (T.R. 265). Dr. Patel also completed a medical assessment of Plaintiff's ability to perform work activities. In the assessment, because there was "*no evidence* of rectal incontinence or coughing and bearing down," Dr. Patel considered Plaintiff to experience no lifting or carrying limitations (T.R. 266) (emphasis in original). Dr. Patel also considered Plaintiff to exhibit no limitations in her ability to stand, walk or sit (T.R. 266). Dr. Patel considered Plaintiff able to perform all postural activities, but no more than occasional crawling activities (T.R. 267). Plaintiff also should experience no limitations in her ability to reach, handle, finger, push, pull, see, hear or speak (T.R. 267). The Commissioner submits that Dr. Patel's findings are consistent with those from the other physicians. Despite Plaintiff voicing complaints of vaginal problems and incontinence, the medical reports consistently demonstrate that these complaints are not supported by the medical records. None of the above-described medical records

described any condition that would bar an individual from performing the basic work activities described by Plaintiff in her past job as an accounting technician (T.R.64).

Plaintiff was also seen by Harold Waldrep, Jr., M.D., on November 15, 2000. Plaintiff reported that her rectal symptoms were much better, but she still complained that she experienced gas (T.R. 274). Plaintiff was diagnosed with vaginitis (infection of the vagina) (T.R. 274). Plaintiff returned on February 13, 2002, again complaining of vaginal odor, but admitted that there was less discharge than two years earlier (T.R. 271).

Plaintiff also contends that the ALJ did not give enough weight to the May 29, 2002, three-question checklist prepared by Plaintiff's attorney and presented to Robert Jacobson, M.D. While Dr. Jacobson checked "yes" in responding to the three questions concerning Plaintiff's subjective allegations of disability, he provided no explanation for his responses, despite being given the opportunity to do so. Moreover, neither the checklist, nor Plaintiff's Brief, cite to the evidence to support a finding that Plaintiff was disabled from all work activities. While Dr. Jacobson may have opined that Plaintiff may not have been able to work, the medical reports discussed above repeatedly demonstrate that other physicians did not believe that Plaintiff had any disabling limitations, and that the main problem seemed to be minimal discharges and her complaint of odor.

The ALJ also noted that aside from just Dr. Patel's observation that Plaintiff had not demonstrated evidence of incontinence, Dr. Cole, Dr. Barnhill, and four other gynecologists likewise found no abnormalities (T.R. 16, 133, 228). The ALJ was left

with numerous physicians that found essentially nothing seriously wrong, much less disabling, versus the checklist from Dr. Jacobson that was prepared by Plaintiff's attorney.

An ALJ may weigh physician reports against other examining and treating physician reports, and may give them reduced weight when they are not supported by medically acceptable clinical or laboratory diagnostic techniques, or otherwise unsupported by the evidence. *See Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); 20 C.F.R. § 404.1527(d)(2). The Fifth Circuit has also observed that:

> "the ALJ has sole responsibility for determining a claimant's disability status." [*Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)]. " '[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.' " *Id.* The treating physician's opinions are not conclusive. *See Brown [v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999)]. The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

*Newton v. Apfel*, 209 F.3d 448, 455-456 (5th Cir. 2000). In the present case, the ALJ discussed and weighed the various treating and examining physician reports before finding Plaintiff's impairments not disabling (T.R. 12-16).

Plaintiff claims that her impairments meet Listed Impairment 5.06 and therefore the ALJ should have found her disabled *per se*. Plaintiff did not elaborate on her statement, other than claiming that her "problems are chronic, persistence [sic] and

on-going." Moreover, Plaintiff made no attempt to demonstrate how she satisfies each of the elements of either A, C, or D.  The determination of whether or not a claimant satisfies a Listed Impairment is made at step three of the sequential evaluation process and the burden of proving that she satisfies a Listed Impairment remains with the Plaintiff.

To qualify for disability under any listing, a claimant must manifest *all* the specified criteria of that particular listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  An impairment will be considered medically equivalent to a listed impairment or impairments if the medical findings of record are at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 404.1526(a).  The regulations further specify that medical equivalence must be based on medical evidence only, including medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 C.F.R. § 404.1526(b); *see also Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) (whether a claimant meets or equals a listed impairment is strictly a medical determination).  The question of whether or not a claimant meets a listed impairment is strictly a medical determination, and conjecture does not play a role in the determination.  *Id.*  The Commissioner is vested with considerable discretion in his application of classifications used for the effective administration of his program.  *See Schweiker v. Gray Panthers*, 453 U.S. 34, 43-44 (1981).

Disorders considered disabling *per se* involving the digestive system are addressed under Listing 5.00 of the Listing of Impairments.  Specifically, Listing 5.06 provides for disability based upon chronic ulcerative or granulomatous colitis as

demonstrated by endoscopy, barium enema, biopsy, or operative finding.  20 C.F.R. pt. 404, subpt. P, app. 1, 5.06.  Plaintiff has failed to present evidence of either ulcers or colitis, and the medical examinations consistently reported no evidence of fistulas, thus refuting her claim that she satisfies Listing 5.06C (T.R. 97, 106, 139, 140, 142, 272, 282).  Moreover, the hematocrit readings were consistently above 30 percent, which defeats a claim that she satisfies Listing 5.06A (T.R. 115, 164, 200).

Plaintiff alleges that, because she experienced non-exertional limitations, vocational testimony should have been solicited.  The ALJ did solicit vocational testimony.  Because Plaintiff was found able to return to her past work, the issue of vocational testimony was not relevant.  If a claimant is found not disabled at the fourth step of the sequential evaluation process and considered able to return to her past work, the ALJ need not advance to the fifth step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  Because Plaintiff was found not disabled at the fourth step, vocational testimony was not necessary to a finding of not disabled.  Under the regulations, the Commissioner is not required to use vocational testimony, but may use a vocational expert when "the issue in determining whether [the claimant is] disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue."  20 C.F.R. § 404.1566(e).  The Fifth Circuit has held that when a claimant is found able to perform her past work, "the lack of expert testimony...becomes irrelevant."  *Harper*, 887 F.2d at 97.

"The mere presence of some impairment is not disabling *per se.*  Plaintiff must

show that she was so functionally impaired by her [impairment] that she was precluded from engaging in any substantial gainful activity."  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  Since more than a scintilla of evidence supports the holding that Plaintiff was able to perform her past work as an accounting technician, the ALJ's decision of not disabled should be affirmed.

### **RECOMMENDATION**

Pursuant to the foregoing, it is RECOMMENDED that the decision of the Administrative Law Judge should be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 15th day of August, 2005.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE